Mr. Adler, on behalf of the appellant Robert Adler, for a few principal reasons, the district I, when I read this case, I was kind of stunned to see you didn't argue that Adler's employment and work was not performance. I think it's, Your Honor, respectfully, I think it's alleged in the complaint, and we said that he did perform. But your brief, how about your brief? I can find it, but I'm fairly certain he said that he performed. I can look for it right now. No, but I'm talking about the, what are they called, the Winston factors? I'm talking about why that isn't your main point. Well, I'll find it, Your Honor, but I'm fairly certain that I did. Let me look for it. Well, I don't want to take up your time looking for something, but I am troubled by the waiver of this argument. Respectfully, Your Honor, I don't believe it was waived. I said that, I believe that we say that he performed. He performed for all of 2017. You may have said it, but it does go to whether there was an agreement. Yes, absolutely. And if you look at the case law, the fact that the action was brought after there was full performance goes to that factor specifically. So I'm happy to find it. I'll find it during the break. But I do believe we made that point, and it's in the complaint that he performed for all of 2017 and helped achieve a significant profit for the desk that he worked on. I'm certain that that's there. The district court, in our view, also misread the contract. The contract which Payward wrote, which Payward presented to Mr. Adler says that it memorialized the discussion that they had, and it sets forth that he has an entitlement to 3.5% of the trading desk profit. And that was signed. It was signed by both sides. In fact, it was signed by two people for Payward. And with that objective formula, that's a binding agreement based on the Winston factors, as you just said, Judge Winter. Even if Payward suggests that it might later supplement the contract, it doesn't say we have to supplement the contract. There's no express reservation that this is not binding agreement until that's done. To the contrary, it says you are entitled to 3.5%. And while there's an expectation of supplementation, it's not required. There's no express reservation. Second, the district court aired when it stated in its decision that mutual assent regarding all material terms to be negotiated was required in the contract. To the contrary, it is well settled in this circuit that employment contracts that contain open additional compensation clauses are nonetheless binding contracts, setting Bravia, NAP, Wintoli, Guggenheimer, and the state court. All those sites are in our brief. And a determination of whether there exists sufficiently definite guidelines to enable a court to supply a bonus figure is a factual issue and one that survives a motion to dismiss. And again, this is Judge Raggi. I wanted to ask you, is the factual question in dispute how to calculate trading desk profits so that then the percentage can be applied to that? Thank you for your question, Your Honor. The complaint alleges that the definition of trading profit was arrived at. There was clearly a factual dispute between Mr. Adler, on the one hand, and Mr. Naig, on the other, who was the CFO, as to how it was calculated. And Mr. Adler specifically alleged that he did not have them anymore, but that there was an existence of numerous emails where they went back and forth over the calculations. And there was no the entitlement to 3.5%. It was how it was arrived at. I understand your argument is that the percentage is clearly established, but there's a dispute between the parties as to how to calculate trading desk profits, or have I misunderstood something? No, I don't think you're misunderstanding. I think that Mr. Adler has alleged that there was an agreement, and then that PayWord added additional expenses in. I believe there's an allegation that the expenses went up to 20% of the cost of capital, and that's why that there was a dispute over the numbers. But that is clearly a factual dispute. All right. But what I'm trying to get at, my ultimate question, is the district court seems to think that this dispute about trading desk profits meant there wasn't an agreement. And I just want to be sure I understand your argument as to why, even if the parties disagree as to how trading desk profits are calculated, there was still an agreement that they would be paid a percentage of it when they were calculated. That is exactly right. And it's our contention that when you apply the law, that there doesn't have to be 100% certainty in an employment agreement as to every factor, every cost, every line item. But Mr. Adler alleges that by September 15th, when he started, there was an agreement or understanding between the parties as to how trading desk profit would be defined. You have about a minute left. Thank you, Judge Kinn. In that regard, I wanted to point out what I'm sure is obvious to the court, which is that this is a motion to 12B1 grounds. In that regard, the defendant is required to show that the allegations in the complaint are so patently deficient as to reflect through legal certainty that the plaintiff cannot recover the amount alleged. Respectfully, the court, the lower court did not give the deference that was required to Mr. Adler, both in connection with its interpretation of the complaint, its application of the Winston factors, and then looking at this other allegations of extrinsic evidence, the understandings that were reached, the emails between the CFO and Mr. Adler, where he specifically discussed the 3.5% entitlement. And there was that question over the calculation. This is why it's quite clear that discovery is required. And that's all that Mr. Adler is asking for here. The opportunity to seek the discovery that is in the possession of the defendant, which will help demonstrate his claim. And I'll just finish by like, there's a case that tied it to in our briefs, it's called Smith versus Courtshead. And in that case, summary judgment was denied where there was an agreement quite similar here, because it said that following up on a telephone discussion, you will be entitled to participate in the equity plan, which hadn't even been developed yet. And in that case, Judge Sinland made quite clear that the record that had been produced in discovery, made quite clear that the agreement could never be dismissed at summary judgment, which is a higher standard, obviously, based on, you know, a vagueness argument. So, all right, thank you. You have three minutes for rebuttal. We'll hear from the other side. Thank you, Your Honor. Thank you, Your Honor. Can everyone hear me? Yes. May it please the court, my name is Michael O'Connor, and I represent Hayward Incorporated, which does businesses tracking cryptocurrency exchange. We asked that the court affirmed in this report below on the alternative grounds that Adler failed to state a claim because there was no definite agreement regarding his bonus. When Adler joined PayWork, he negotiated a contract that included certain definite terms. By the way, are you conceding that there was subject matter jurisdiction? No, Your Honor, as we state in our briefs, we're not conceding there's subject situations, and the court has addressed this before in a case like NOAC, or a case like the Silver v. Kingshaw, where there is entanglement between the merits question and the subject matter jurisdiction question. So, in order to get to the question of the amount of controversy, the court first needs to determine whether there's a legal entitlement. And for that, it reads the contract, and that's a merits question. And we believe that should be resolved on the matter. Usually, we have to figure out whether we have jurisdiction first, but I understand the point. Go ahead. So, there were certain definite agreements, Mr. Adler's salary, Mr. Adler's benefits, Mr. Adler's options, and the vesting schedule for those options. But what was not agreed upon was Mr. Adler's bonus. And in this regard, I'll point to the court's contract itself at A-19 of the appendix, which says, the company expects to supplement this letter after you become an employee and ask for further discussion with you additional terms to be mutually agreed to concerning the bonus calculation part. So, your colleague on the other side relies on cases that allow courts to fill in the gaps in certain circumstances, obviously, depending on the factual circumstances. Why doesn't this case fit into that line of cases? So, first, Your Honor, I'll suggest that there's sort of two layers here. The first layer is, I don't believe any of those cases apply where there's been a written reservation. There was no written reservation in Knapp. There was no written reservation in Knett. There was no written reservation in Gentoli, et cetera, et cetera, et cetera. Here, we believe there was a written reservation of agreement. And there's a written reservation saying, until we agree to additional terms, and those terms include bonus calculation and targets, we don't have an agreement. And I would point the court instead to a case like Hall v. UPS, where the New York Court of Appeals said, even though we've calculated, UPS said, we've calculated this employee's bonus, we've decided this employee should be granted the bonus, but then they fired the employee and refused to pay the bonus simply because he had not received a piece of paper, a participation notice. That was a ministerial, a training insignificant requirement, but the New York Court of Appeals- Well, the contract here refers to a base salary of $125,000, which implies that there would be something more. And then it also refers to an entitlement to a bonus equity, and then there's some glitch there of 3.5%. On a motion to dismiss, could that language not be read to mean that there was indeed a meeting of the minds that he would be paid a bonus, and the only question was how much and how to calculate it? So, no, Your Honor, I don't believe so. Again, I think there are two specific open terms here, and Mr. Adler never suggests that those terms are filled. He was apprised multiple times that these bonus calculation targets were open terms. He never attempts to plead facts to fill them. With regard to the entitlement language, which Mr. Adler places a lot of emphasis on, I would point the court to the New York Court of Appeals decision in Joseph Martindale v. Schumacher. In that case, a tenant had a lease with a landlord saying that he had a, quote, right, unquote, to a five-year renewal of the lease with a rent that was, quote, to be agreed upon, unquote. The tenant wanted to renew the lease, wanted to exercise his right to entitlement, but the landlord wanted him to pay a higher rent. So the tenant sued, the appellate division said, well, you have this right, this entitlement to a renewal of the lease, and we're going to impose a rent. That was reversed by the New York Court of Appeals. The New York Court of Appeals said, absolutely not. The parties agreed to negotiate, to discuss, and to agree upon a rent. You can't impose that upon the party. Judge Ruggiero, may I ask you why there isn't a fact question here based on the fact that there's language in this agreement that talks, as Judge Chin said, about an entitlement to a bonus equity to 3.5% of the trading desk profit, which suggests there's been an understanding at least that far, with then the language that says that there is an expectation to supplement this letter with additional terms to be agreed to on the bonus calculation and targets. To the extent that Mr. Adler pleads that he performed his part of the job, and there was no supplementing by the company, why isn't there an entitlement to, why isn't there a jury question as what to, well, in the absence of some further agreement, the 3.5% of the trading desk profits would be calculated according to industry standards, general accounting principles, or whatever else, but not that you get to walk away from this entirely. Why isn't there at least a fact question as to what the party's expectations were if you didn't supplement the letter? Your Honor, let me suggest that there is a multi-step calculation. The first question is what the trading desk profit is. Now, the parties, from Adler's own claims, continue to disagree over the profit, but Mr. Adler says that the formula was generally accepted accounting principles, but once you take 3.5% of the trading desk profit, you then still need to apply a bonus calculation, and you potentially need to apply targets below which Mr. Adler would earn no bonus. The parties clearly stated that in the agreement, and to your point as to why this may require factual discovery and why this can't get past the motion dismiss, it could potentially get past the motion dismiss if Mr. Adler pleaded specifically under the pains and penalties of sanctions that there were facts saying the parties agreed on bonus calculations, the parties agreed on targets. Payward pointed out this gap in the pleading in its briefing below. The district court pointed out this gap with regard to bonus calculation and targets in its opinion. Payward pointed out again in his opposition before this court, again and again and again, Mr. Adler has been offered the opportunity to say we did agree on bonus calculation, we did agree on targets, and these are the facts that would support it. He has not satisfied the pleading standard, and that's actually also, Your Honor, why he can't be given leave to amend. I've been making myself clear. As I understand it, you're urging that we read this paragraph, the commission or bonus paragraph, to suggest that there is no agreement on any bonus entitlement until there's a supplemental letter. Is that correct? That's what you're urging us to say this agreement says? Yes, Your Honor, and to that point, I'm perplexed at that because the language about your entitlement to a bonus equity doesn't suggest that you have no entitlement until there's a supplemental letter. That's why I'm suggesting to you there's at least sufficient ambiguity in this language to suggest that there may well have been an agreement that would be the fine points of which would be included in a supplemental letter, and as I understand it, your client never supplied a supplemental letter. So, Your Honor, Mr. Adler's claims are clear that the parties continue to negotiate all these points, but what Mr. Adler notably fails to plead is the parties agreed on this point. Now, with regard to your suggesting that, you know, once you have an entitlement, then you're just filling in minor gaps, I think all the UPS points against that and Joseph Martindale points against that. I think there are multiple cases that suggest that when the parties say that there are specific terms that need to be filled, they cannot just be designated minor. They cannot just be designated as unimportant to their contract. You have one minute. They were in fact written into the contract. Okay. On our conversion from 12B1 to 12B6, I think we cite ample precedent in the briefs for conversion from 12B1 to 12B6, including the Supreme Court's decision in Morrison, this Court's decision in Loath. I will rest on the briefing with regards to that point. With regard to Smith v. Horsehead, which opposing counsel raised in his original argument, as I recall, Smith v. Horsehead, there was actually a finding that there was potentially an equity plan there. So I think that counsel has misstated the case. But unless the Court has any further questions, I'll rest on the briefing. Thank you. May I proceed, Your Honor?  Thank you. I wanted to come back to Judge Winter's question about performance, because the waiver was in his father's name. I'd like to direct Judge Winter and the Court to the reply brief. It's in a number of spots, but most importantly— You can't raise an argument for the first time in a reply brief. Oh, no. I'm sorry. The Winston factor, the second Winston factor is discussed in both cases, and this argument is in both. I just have the reply brief in my hand. But in the context of the second Winston factor, it talks about performance, whether there's been partial performance of the contract. And that's in both the lead and the reply. And I'm just adding to the reply brief because we compare the performance of Mr. Adler here to the performance of the plaintiff in the Kinney—I'm sorry, I'm not sure if it's Kinney or Kinnett case. And we talk about how full performance was done by both. And the second Winston factor is specifically addressed in both the lead and the reply brief. In this regard, I wanted to go through the factors fairly quickly. Question number one, of course, is whether there's been an express reservation of the right not to be bound in the absence of a writing. It's very clear here that there is no express reservation. Payward agrees with Mr. Adler that this is the most important factor. There was no express reservation whatsoever. Quite to the contrary, there's a memorialization of a agreement that was had in a prior discussion. And while Payward expected to supplement the contract, there was no express statement, which is what is required under the first Winston factor, as set forth in Judge Chin's case, a just right and others. There's no express reservation that this is not a final agreement that the parties can be bound by. Again, also on partial performance, which is the second factor, this is an employment agreement. Mr. Adler fully performed. He went there. He started the desk that set forth in the complaint. He generated significant profit, among others, on the desk that set forth in the complaint. He fully performed. He received his base salary. He started on the date he was supposed to start on. He received benefits. What he didn't receive was the 3.5% trading desk entitlement. Thank you, Your Honor. Even though that went, sorry, he did not receive 3.5% of trading desk profit, but he did have emails and conversations, which again is why discovery is necessary, he alleges, with Payward about that. The fourth factor, I'm jumping to third for a moment, but the fourth factor, even Payward states that whether the agreement that issues the type of contract usually committed to writing, it's of course our position that it was reduced to writing, but even Payward says that that's not a question that can be determined at this very early stage of the case. Based on those Winston factors, we think it's a very strongly leaned in favor at the motion to dismiss stage to Mr. Adler having the right to proceed to discovery and to continue his case. These are fact disputes at issue, and respectfully, the district court erred by changing that into a question of law and dismissing the case without ever giving Mr. Adler the opportunity to garner the evidence to prove his claims. And with that, I'll reserve our remaining arguments, and I thank the court for its time and attention. Thank you. Thank you both. The court will reserve